| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| **Lorene Lynn Mies**<br>**38975 Sky Canyon Drive, Suite 204**<br>**Murrieta, CA 92563**<br>**(951) 894-4791 Fax: (951) 894-4795**<br>California State Bar Number: **110954**<br><br>☒ *Attorney for Debtor(s)*<br>☐ *Debtor(s) appearing without an attorney* | |

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

| In re:<br><br>    **Darrell Wayne Corbin**<br>    **Melodie Diane Corbin**<br><br>                              Debtor(s). | CASE NO.: **6:11-bk-22860** |
|---|---|
| | CHAPTER: **13** |
| | **DEBTOR'S MOTION TO AVOID JUNIOR**<br>**LIEN ON PRINCIPAL RESIDENCE**<br>**[11 U.S.C. § 506(d)]** |
| | DATE:  **5/31/2011**<br>TIME:   **1:30 p.m.**<br>COURTROOM:  **304**<br>PLACE: **3420 Twelfth Street**<br>          **Riverside, CA  92501** |

**NAME OF CREDITOR HOLDING JUNIOR LIEN ("Respondent"):**  CHASE HOME FINANCE, LLC. and JP MORGAN CHASE BANK, N.A.

**A. Property at Issue:** Debtor moves to avoid the junior deed of trust, mortgage or other encumbrance (hereinafter, "Lien") encumbering the following real property (hereinafter, the "Property"), which is the principal residence of debtor(s).

    Street Address:  **41308 Yuba Circle**
    Unit Number: _____
    City, State, Zip Code: **Temecula, CA  92591**

Legal description or document recording number (including county of recording):

☒ See attached page.

**B. Case History:**

    **1.** A voluntary petition under Chapter ☐ 7 ☐ 11 ☐ 12 ☒ 13 was filed on:  **4/19/2011**

    **2.** ☐ An Order of Conversion to Chapter 13 was entered on *(specify date)*:

**C. Grounds for Avoidance of Junior Lien:**

    **1.** As of  **4/19/2011** , the Property is subject to the following liens in the amounts specified securing the debt against the Property, which the debtor seeks to have treated as indicated:

        i.  **1st Mortgage - Bank of America, N.A.** in the amount of $ **324,320.31** .

        ii.  **2nd Mortgage - Chase Home Finance, LLC/JP Morgan Chase Bank N.A.** in the amount of $ **108,479**

                                                                    ☒ is ☐ is not to be avoided;

        iii. _____ in the amount of $ _____ ☐ is ☐ is not to be avoided;

                ☐ See attached page for additional lien(s).

---

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

2. As of __4/19/2011__, Property is worth no more than $ __289,000__.

    a. As a result, Respondent's Lien encumbering the Property is wholly unsecured.

**3. Evidence in Support of Motion:**

    a. ☒ The amount of the lien identified in paragraph C(1)(i) is based on __4/2011 Payoff Statement and 1st Deed of Trust__, attached hereto and identified as Exhibit __2__.

    b. ☒ The amount of the lien identified in paragraph C(1)(ii) is based on __Debtor's Credit Report and 2nd Deed of Trust in favor of Washington Mutual Bank, now JPMorgan Chase Bank__ attached hereto and identified as Exhibit __3__.

    c. ☐ The amount of the lien identified in paragraph C(1)(iii) is based on _____, attached hereto and identified as Exhibit ___.

    d. ☒ The relative priority of the liens encumbering the Property is established by evidence attached as Exhibit __4__.

    e. ☒ The value of the Property from paragraph C(2) is based on __Debtors' Declaration__, attached as

    f. ☐ Exhibit ___.

    g. ☒ Debtor submits the attached Declaration(s).

    h. ☒ Other evidence (specify): __Exhibit "1" - Grant Deed - Legal Description__

**4. WHEREFORE, Debtor prays that this Court issue an Order granting the following relief:**

    a. That the Property is valued at no more than $ __289,000__.

    b. That no payments are to be made on the secured claim of the Respondent, and regular mortgage maintenance payments are not to be made, before the Debtor's ☒ completion of the chapter 13 plan, or ☒ receipt of a chapter 13 discharge.

    c. That the Respondent's claim on the junior position lien shall be allowed as a non-priority general unsecured claim in the amount per the filed Proof of Claim.

    d. That the avoidance of the Respondent's junior lien is contingent upon: The Debtor's ☒ completion of the chapter 13 plan, or ☒ receipt of a chapter 13 discharge.

    e. That the Respondent shall retain its lien in the junior position for the full amount due under the corresponding note and lien in the event of either the dismissal of the Debtor's chapter 13 case, the conversion of the Debtor's chapter 13 case to any other chapter under the United States Bankruptcy Code, or if the Property is sold or refinanced prior to the Debtor's ☒ completion of the chapter 13 plan, or ☒ receipt of a chapter 13 discharge.

    f. That in the event that the holder of the first position lien or any senior lien on the Property forecloses on its interest and extinguishes the Respondent's lien rights prior to the Debtor's completion of the chapter 13 plan and receipt of a chapter 13 discharge, the Respondent's lien shall attach to the proceeds greater than necessary to pay the senior lien, if any, from the foreclosure sale.

5. ☐ See attached continuation page for additional provisions.

---

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

October 2010                                    Page 2                           F 4003-2.4.MOTION

Dated: <u>May  3, 2011</u>

Respectfully submitted,

By: _____
    *Signature of Debtor or Attorney for Debtor*

Name:  <u>Lorene Lynn Mies</u>
       *Type Name of Debtor or Attorney for Debtor*

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*October 2010*                    Page 3                    F 4003-2.4.MOTION

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**38975 Sky Canyon Drive,  Suite 204, Murrieta, CA 92563**

A true and correct copy of the foregoing document described as   **Notice of Motion and Debtor's Motion to Avoid Junior Lien on Principal Residence**   will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **5/3/2011** , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

**UNITED STATES TRUSTEE (RS) - ustpregion16.rs.ecf@usdoj.gov**
**ROD (DS) DANIELSON, CHAPTER 13 TRUSTEE - notice-efile@rodan13.com**
**LORENE LYNN MIES - Lorene@lmies.law.com**

☐ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On **5/3/2011** , I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Deborah Saltzman
UNITED STATE BANKRUPTCY COURT
3420 Twelfth Street
Riverside, CA  92501

☒ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ____ , I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| **May  3, 2011** | CHRISTINE CARBONELL | |
| Date | Type Name | Signature |

---

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

October 2010                                    Page 4                           **F 4003-2.4.MOTION**

**II. SERVED BY U.S. MAIL, CERTIFIED MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
*(Attached page to Proof of Service-please include any additional or alternative addresses and attach additional pages if needed)*
*(Certified Mail required for service on a national bank.)*

| *Name of 1st Lien Holder & Address*<br>BANK OF AMERICA, N.A.<br>201 N. Tyron Street<br>Charlotte, NC 28202 | Address from:<br>☐ Proof of Claim ☐ Secretary of State<br>☒ FDIC website ☒ Other: *specify* | Delivery Method<br>☒ US Mail<br>☐ Certified Mail -<br>Tracking#_____<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name: |
|---|---|---|
| *Name of 1st Lien Holder - Agent for Service of Process* | Address from:<br>☐ Proof of Claim ☐ Secretary of State<br>☐ FDIC website ☐ Other: *specify* | Delivery Method<br>☐ US Mail<br>☐ Certified Mail -<br>Tracking#_____<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name: |
| *Name of 1st Lien Holder - Servicing Agent* | Address from:<br>☐ Proof of Claim ☐ Secretary of State<br>☐ FDIC website ☐ Other: *specify* | Delivery Method<br>☐ US Mail<br>☐ Certified Mail -<br>Tracking#_____<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name: |

| *Name of 2nd Lien Holder & Address*<br>CHASE HOME FINANCE, LLC<br>ATTN: OFFICER OF THE BANK<br>194 Wood Avenue S<br>Iselin, NJ 08830 | Address from:<br>☐ Proof of Claim ☒ Secretary of State<br>☐ FDIC website ☐ Other: *specify* | Delivery Method<br>☐ US Mail<br>☒ Certified Mail -<br>Tracking# 7010 3090 0003 6062 2751<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name: |
|---|---|---|
| *Name of 2nd Lien Holder - Agent for Service of Process*<br>CT CORPORATION SYSTEMS<br>AGENT FOR SERVICE OF PROCESS<br>FOR CHASE HOME FINANCE, LLC.<br>111 Eighth Ave. 13th Floor<br>New York, NY 10011 | Address from:<br>☐ Proof of Claim ☒ Secretary of State<br>☐ FDIC website ☐ Other: *specify* | Delivery Method<br>☐ US Mail<br>☒ Certified Mail -<br>Tracking# 7010 3090 0003 6062 2768<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name: |
| *Name of 2nd Lien Holder - Servicing Agent*<br>JP MORGAN CHASE BANK, N.A.<br>ATTN: OFFICER OF THE BANK<br>1111 Polaris Parkway<br>Columbus, OH 43240 | Address from:<br>☐ Proof of Claim ☐ Secretary of State<br>☒ FDIC website ☐ Other: *specify* | Delivery Method<br>☐ US Mail<br>☒ Certified Mail -<br>Tracking# 7010 3090 0003 6062 2775<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name: |

| *Name of 3rd Lien Holder & Address* | Address from:<br>☐ Proof of Claim ☐ Secretary of State<br>☐ FDIC website ☐ Other: *specify* | Delivery Method<br>☐ US Mail<br>☐ Certified Mail -<br>Tracking#_____<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name: |
|---|---|---|
| *Name of 3rd Lien Holder - Agent for Service of Process* | Address from:<br>☐ Proof of Claim ☐ Secretary of State<br>☐ FDIC website ☐ Other: *specify* | Delivery Method<br>☐ US Mail<br>☐ Certified Mail -<br>Tracking#_____<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name: |

---

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**Address  2nd Mtg confirmed:** ☑FDIC ☑CA Secty St.  ☐Other

Back to Search Bank Find

# Your Bank at a Glance as of 4/7/2011.

---

**JPMorgan Chase Bank, National Association** (FDIC Cert: 628) **is FDIC Insured.**

---

**JPMorgan Chase Bank, National Association** has been FDIC insured since **January 1,**
It was established on **January 1, 1824.**
Its main office (headquarters) is located at:
**1111 Polaris Parkway**
**Columbus, Ohio 43240**
**County of Delaware**

**JPMorgan Chase Bank, National Association** has **5551** Domestic Branches (Offices) located in **26** state(s)
Foreign Offices. (Check to locate Branches (Offices) by state.)

JPMorgan Chase Bank, National Association's reported (or primary) website: http://www.jpmorganchase.com

**JPMorgan Chase Bank, National Association** is chartered as a National Bank. Therefore the primary feder
regulator is the **Office of the Comptroller of the Currency (OCC)**. For **consumer assistance** regarding an
this institution, please contact the **OCC** directly using http://www.helpwithmybank.gov/.

Calculate your FDIC insurance coverage at JPMorgan Chase Bank, National Association using FDIC EDIE at www.fd
Last financial information available about JPMorgan Chase Bank, National Association.
Historical profile of Jpmorgan Chase Bank, National Association.

For additional information please click on one of the following:
1. For more information on Federal Deposit Insurance, Your Insured Deposits or Insured or Not Insured
2. View the industry's overall picture - Statistics at a Glance
(This will open a new window.)
3. Current Financial data about your bank - Institution Directory – Two years Financial Report
(This will open a new window.)
4. Examine your bank's financial data - CALL/TFR Financial Information *12/31/2010 Latest Available*
5. Study branching and deposit market share - Summary of Deposits/Market Share
6. Analyze and compare individual institutions and create custom reports - Institution Directory – Compa
7. Review industry using 8 predefined reports - Statistics on Depository Institutions
8. Identify the latest performance trends in your state - Quarterly Banking Profile State Tables
(This will open a new window.)
9. Analyze institutions and custom peer groups - Statistics on Depository Institutions
10. View branch office deposit information - Summary of Deposits
11. Community Reinvestment Act (CRA) Performance Ratings - CRA Performance Ratings
12. FDIC's Disclaimer - FDIC's Disclaimer

Questions, Suggestions & Requests

*common good* *privacy* *All people* *Liberty* *Speak* *without discrimination*
*Conscience*

# California Secretary of State Debra Bowen

| Secretary of State | Administration | Elections | Business Programs | Political Reform | Archives | Registries |
|---|---|---|---|---|---|---|

**Business Entities (BE)**

Online Services
- Business Search
- Disclosure Search
- E-File Statements
- Processing Times

**Main Page**

**Service Options**

**Name Availability**

**Forms, Samples & Fees**

**Annual/Biennial Statements**

**Filing Tips**

**Information Requests**
(certificates, copies &
status reports)

**Service of Process**

**FAQs**

**Contact Information**

Resources
- Business Resources
- Tax Information
- Starting A Business
- International Business
  Relations Program

**Customer Alert**
(misleading business
solicitations)

## Business Entity Detail

Data is updated weekly and is current as of Friday, April 29, 2011. It is not a complete or certified record of the entity.

| | |
|---|---|
| Entity Name: | CHASE HOME FINANCE LLC |
| Entity Number: | 200502410155 |
| Date Filed: | 01/20/2005 |
| Status: | ACTIVE |
| Jurisdiction: | DELAWARE |
| Entity Address: | 194 WOOD AVE S |
| Entity City, State, Zip: | ISELIN NJ 08830 |
| Agent for Service of Process: | C T CORPORATION SYSTEM (C0168406) |
| Agent Address: | * |
| Agent City, State, Zip: | * |

* Indicates the information is not contained in the California Secretary of State's database.

* **Note:** If the agent for service of process is a corporation, the address of the agent may be requested by ordering a status report.

- For information on checking or reserving a name, refer to **Name Availability**.
- For information on ordering certificates, copies of documents and/or status reports or to request a more extensive search, refer to **Information Requests**.
- For help with searching an entity name, refer to **Search Tips**.
- For descriptions of the various fields and status types, refer to **Field Descriptions and Status Definitions**.

**Modify Search**    **New Search**    **Printer Friendly**    **Back to Search Results**

Privacy Statement | Free Document Readers

Copyright © 2011   California Secretary of State

common good    privacy    All people    Liberty    Speak    Conscience    without discrimination

# California Secretary of State Debra Bowen

| Secretary of State | Administration | Elections | **Business Programs** | Political Reform | Archives | Registries |

**Business Entities (BE)**

Online Services
- Business Search
- Disclosure Search
- E-File Statements
- Processing Times

**Main Page**

**Service Options**

**Name Availability**

**Forms, Samples & Fees**

**Annual/Biennial Statements**

**Filing Tips**

**Information Requests**
(certificates, copies &
status reports)

**Service of Process**

**FAQs**

**Contact Information**

Resources
- Business Resources
- Tax Information
- Starting A Business
- International Business
  Relations Program

**Customer Alert**
(misleading business
solicitations)

## Business Entity Detail

Data is updated weekly and is current as of Friday, April 29, 2011. It is not a complete or certified record of the entity.

| | |
|---|---|
| Entity Name: | C T CORPORATION SYSTEM |
| Entity Number: | C0168406 |
| Date Filed: | 09/11/1936 |
| Status: | ACTIVE |
| Jurisdiction: | DELAWARE |
| Entity Address: | 111 EIGHTH AVE, 13TH FLOOR |
| Entity City, State, Zip: | NEW YORK NY 10011 |
| Agent for Service of Process: | THE CORPORATION COMPANY |
| Agent Address: | 1232 Q ST 1ST FLR |
| Agent City, State, Zip: | SACRAMENTO CA 95811 |

\* Indicates the information is not contained in the California Secretary of State's database.

- If the status of the corporation is "Surrender," the agent for service of process is automatically revoked. Please refer to California Corporations Code **section 2114** for information relating to service upon corporations that have surrendered.
- For information on checking or reserving a name, refer to **Name Availability**.
- For information on ordering certificates, copies of documents and/or status reports or to request a more extensive search, refer to **Information Requests**.
- For help with searching an entity name, refer to **Search Tips**.
- For descriptions of the various fields and status types, refer to **Field Descriptions and Status Definitions**.

**Modify Search    New Search    Printer Friendly    Back to Search Results**

**Privacy Statement** | **Free Document Readers**

Copyright © 2011    California Secretary of State

# DEBTOR'S DECLARATION

## DECLARATION OF DEBTORS

We, DARRELL WAYNE CORBIN and MELODIE DIANE CORBIN declare as follows:

1. We are the Debtors in this matter. If called to do so, we could and would testify to the following, all of which is within our personal knowledge unless otherwise stated.

2. This case was commenced on April 19, 2011, when we filed our Chapter 13 Petition.

3. We currently own a home located at 41308 Yuba Circle, Temecula, CA  92591, which is the real property located in the State of California, legally described as: LOT 36 OF TRACT 20881, County of Riverside, State of California, as per map recorded in Book 180, Page 42 through 47 of Maps, in the office of the County Recorder of said County. See *GRANT DEED*, a true and correct copy of which is attached hereto as **Exhibit "1"**.

4. We believe that our house is worth $289,000.00.  We believe this to be the value because we have lived in this neighborhood for several years and have seen the economy change and the effect it has had on the real estate in this neighborhood. Based on the size and model and current condition of our home, it is our opinion that our home is now worth $289,000.00. In addition, we researched values on the internet and found the fair market value listed on Zillow.com to be $289,000.00.

5. There is a 1st mortgage on our house with BANK OF AMERICA HOME LOANS (BANK OF AMERICA, N.A.), the principal balance is approximately **$324,320.31**. See, *Mortgage Statement and 1st Deed of Trust*, true and correct copies of which are attached hereto as **Exhibit "2"**.

6. There is also a 2nd mortgage on our house with CHASE HOME FINANCE, LLC (JP MORGAN CHASE BANK, N.A.); the balance is approximately **$108,479.00**.  See, *2nd*

*Deed of Trust and Credit Report from Suite Solutions dated March 24, 2011*, true and correct copies of which are attached hereto as **Exhibit "3".**

7.    Based upon the foregoing, the 2nd Deed of Trust is, and for all intents and purposes, a wholly unsecured debt.  The chapter 13 Plan, therefore, provides for the avoidance of the 2nd Trust Deed as an encumbrance on the Residence.

We affirm under penalty of perjury under the laws of the Untied States of America that the foregoing is true and correct, and that this declaration was executed on April 19, 2011, at Murrieta, California.



_____
Darrell Wayne Corbin, Debtor


_____
Melodie Diane Corbin, Debtor

# Zillow.com

## 41308 Yuba Cir
Temecula, CA 92591

⌂ **Zestimate®:** $289,000
00

| | |
|---|---|
| **Value Range:** | $251K – $321K |
| **Monthly payment:** | $1,559 |
| **Bedrooms:** | 4 |
| **Bathrooms:** | 2.75 |
| **Sqft:** | 2,272 |
| **Lot size:** | 7,840 sq ft / 0.18 acres |
| **Property type:** | Single Family |
| **Year built:** | 1989 |
| **Parking type:** | Garage - Attached |
| **Cooling system:** | Central |
| **Heating system:** | |
| **Fireplace:** | Yes |
| **Last sold:** | May 25 2001 |
| **County:** | Riverside |
| **Garage sqft:** | 608 |
| **Parcel #:** | 953130016 |
| **Per floor sqft:** | 2,272 |
| **Pool:** | Yes |
| **Roof type:** | Tile |
| **# Stories:** | 2 |
| **Unit cnt:** | 1 |
| **Zillow Home ID:** | 18185071 |

## Nearby schools

| | |
|---|---|
| **District:** | Temecula Valley Unified |
| **Primary:** | Rancho Elementary School |
| **Middle:** | Margarita Middle School |
| **High:** | Rancho Vista High |

> 🌐 **Take Zillow on the go!** Get free Zillow apps for the iPhone, iPad, and Android.

## Description

This 2272 square foot single family home has 4 bedrooms ar Temecula, California. This home is in the Temecula Valley Ur Elementary School, Margarita Middle School and Rancho Vist

## Map



POWERED BY Google

## Charts and Data

| | Value | Range |
|---|---|---|
| **Zestimate®** | $289,000 | $251K – $321K |



This home     92591     Temecula     last sold

### Price History

| Date | Description | Price |
|------|-------------|-------|
| 05/25/2001 | Sold | $268,000 |

### Tax History

| Year | Taxes paid | % Change |
|------|-----------|----------|
| 2009 | $3,228 | -12.3% |

# Exhibit "1"  - Legal Description

**Recording Requested By**
First American Title Company

DOC # 2001-232539
05/25/2001 08:00A Fee:0.00
Page 1 of 1 Doc T Tax Paid
Recorded in Official Records
County of Riverside
Gary L. Orso
Assessor, County Clerk & Recorder

RECORDING REQUESTED BY
First American Title
AND WHEN RECORDED MAIL TO:
Darrell W. Corbin
Melodie D. Corbin
41308 Yuba Circle
Temecula, CA  92591

A.P.N: 953-130-016   TRA No: 130-39   Orde

| M | S | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC |
|---|---|---|------|------|----|----|-------|-----|------|
| A | R | L | | | I | | COPY | LONG | REFUND | NCHG | EXAM |

# GRANT DEED

THE UNDERSIGNED GRANTOR(s) DECLARE(s) THAT DOCUMENTARY TRANSFER TAX IS: COUNTY *294 80*
[ X ]  computed on full value of property conveyed, or
[   ]  computed on full value less value of liens or encumbrances remaining at time of sale,
[   ]  unincorporated area;  [ X ] City of  Temecula , and

FOR A VALUABLE CONSIDERATION, Receipt of which is hereby acknowledged,

**Timothy James Hilt, a Married Man, as His Sole and Separate Property**

hereby GRANT(S) to
**Melodie D. Corbin and Darrell W. Corbin, Wife and Husband, as Joint Tenants**

the following described property in the City of Temecula, County of Riverside State of California;

**Lot 36 of Tract 20881, as shown by Map on file in Book 180, Pages 42 through 47 of Maps, records of Riverside County, California.**

Document Date:  April 10, 2001

Timothy James Hilt

STATE OF CALIFORNIA                                          )SS
COUNTY OF  Riverside                                         )
On  May 18, 2001  before me,  Karen A. Miller, Notary Public
personally appeared  Timothy James Hilt
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by
his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Signature _____                       The area below is for official notarial seal.

KAREN A. MILLER
Comm. # 1282730
NOTARY PUBLIC CALIFORNIA
Riverside County
My Comm Expires Nov. 28, 2004

Mail Tax Statements to:  Same as Above  or  Address Noted Below

# Exhibit "2"  - 1st Mortgage Statement

CRPRDNRBS42b          3/28/2011  12:34:56 PM   PAGE    2/003    Fax Server



**Bank of America**

**Home Loans**

*Payoff Department, Mail Stop TX2-981-03-13*
*7105 Corporate Drive*
*Plano, TX  75024-4100*

# PAYOFF DEMAND STATEMENT

**Statement Void After
April 8, 2011**

Statement Date
March 25, 2011

**BAC Home Loans Servicing, LP
Loan No.:    79562168**

**Name & Property Address:**
Melodie D & Darrell W Corbin
41308 Yuba Circle
Temecula, CA  92591

ATTENTION MELODIE
XXXX
XXXX
XXXXX 99999

Faxed to:      1-951-506-0209

## This loan is in Foreclosure.

The expiration of this demand is the sooner of the above Void After date or the foreclosure sale date.

(CONV)

| PAYOFF CALCULATION | | |
|---|---|---|
| | Principal Balance as of 06/01/2010 | $306,180.64 |
| | Interest from 06/01/2010 to 04/08/2011 | 14,682.50 |
| | County Recording Fee | 18.00 |
| | Uncollected Late Charges | 1,177.35 |
| | Fees Due | 120.00 |
| | Escrow Balance Due | 2,788.48 |
| | Less:  Partial Payment Balance | 646.66 - |
| **Total Amount Required to Release Lien** (As of April 8, 2011) | | **$324,320.31** |

*AMENDED DEMAND STATEMENTS ARE SENT AUTOMATICALLY IF THE TOTAL AMOUNT DUE INCREASES BEFORE APRIL 8, 2011.*

To provide you with the convenience of an extended 'Statement Void After' date, the Total Amount Due may include estimated fees, costs, additional payments and/or escrow disbursements that will become due prior to the 'Statement Void After' date, but which are not yet due as of the date this Payoff Statement is issued.  You will receive a refund if you pay the Total Amount Due and those anticipated fees, expenses, or payments have not been incurred.

## INTEREST CALCULATIONS

For all full month payment periods, interest is calculated on a monthly basis.  Accordingly, interest for all full months, including February, is calculated as 30/360 of annual interest, irrespective of the actual number of days in the month.  For partial months, interest is calculated daily on the basis of a 365 day year.

**Adjustable rate mortgage loans may have more than one interest rate in effect during the period in which this demand statement applies.  Amended demand statements are sent automatically if the total amount due increases before April 8, 2011.**

| Daily Interest[1] | From | To | Interest rate |
|---|---|---|---|
| 47.1853 | 04/01/2011 | 04/08/2011 | 5.6250 |

[1]Daily Interest = Principal Balance x Interest Rate ÷ 365

## PAYOFF INSTRUCTIONS

Payoff funds must be made payable to **BAC Home Loans Servicing, LP** and will be accepted by **WIRE** or **CERTIFIED FUNDS ONLY**.  They **MUST** reference the **BAC Home Loans Servicing, LP** loan number, property address and borrower's name in the OBI (Originator Beneficiary Information) field of the wire transfer or on the face of the check and must be sent per the instructions below.  Failure to do so may cause delays resulting in additional interest due or the return of the funds to the remitter.  Funds received



**Home Loans**

PO Box 5170
Simi Valley, CA 93062-5170

Statement date 11/29/2010

**Account Number 079562168**

Property address
41308 Yuba Circle

0079865 01 AV 0.332 *AUTO  T4 1 7199 02591-1546
MSR CZ AG 0101-----0--2--- C0000060 IN 1 P80023
MELODIE D & DARRELL W CORBIN
41308 Yuba Cir
Temecula CA 92591-1546

: IMPORTANT NOTICE

**BAC Home Loans Servicing, LP services your home loan on behalf of the holder of your note (Noteholder). This is to advise you that your account remains seriously delinquent.**

If we do not hear from you immediately, we will have no alternative but to take appropriate action to protect the interest of the Noteholder in your property.  This action may include returning payments that are less than the total amount due.

**Please give this matter your most urgent attention.** Please pay the total amount due immediately. BAC Home Loans Servicing, LP  will proceed with collection action until your account is brought fully current, and you will be responsible for all cost incurred in this process to the full extent permitted by law.

Note to Delaware Residents: Delaware residents who are struggling with their mortgage payments will find information on state-supported assistance by visiting www.deforeclosurehelp.org.

If you are unable to bring your account current, please contact us at **1.800.669.6654**.

Sincerely,

LOAN SERVICING
Loan Counselor

| HOME LOAN SUMMARY | Home loan overview as of 11/29/2010 | | Amount due on 12/01/2010 as of 11/29/2010 | |
|---|---|---|---|---|
| | Principal Balance | $307,145.35 | Home loan payment due 12/01/2010 | $2,672.92 |
| | Escrow balance | -$1,679.04 | Past due payment amount | 15,910.44 |
| | Late Charge if payment received after 12/16/2010 | $96.05 | Partial payment balance | 646.66 |
| | | | (see next page for account details) | |

Calls may be monitored or recorded to ensure quality service.  We may charge you a fee (of up to $40.00) for any payment returned or rejected by your financial institution, subject to applicable law.

**BAC Home Loans Servicing, LP is required by law to inform you that this communication is from a debt collector.**

**PAYMENT INSTRUCTIONS**
1. Please
   • don't send cash
   • don't staple the check to the payment coupon
   • don't include correspondence
   • include coupon with payment

2. Write the account number on the check or money order.

3. Make the check payable to
   **BAC Home Loans Servicing, LP**
   Attn: Remittance Processing
   PO Box 515503
   Los Angeles, CA 90051-6803

| Account number | **079562168** | (9) |
|---|---|---|
Melodie D & Darrell W Corbin
41308 Yuba Circle
Temecula, CA 92591

SEE OTHER SIDE FOR IMPORTANT INFORMATION    7199

BAC Home Loans Servicing, LP
PO BOX 515503
LOS ANGELES, CA 90051-6803

Payment due **Dec 1, 2010**    *$2,672.92  *
After **Dec 16, 2010** late payment   * $2,768.97

*Payment amount includes late charges. See Home Loan Details for breakdown.

| Additional Principal | |
| Additional Escrow | |
| Check total | |

07956216890000026729200027689 7

079562168

0796216890000026729 200 0276897

⑆586990058⑆079562168⑈

Recording Requested By:

First American Title Company

Recording Requested By:

~~BSM FINANCIAL, L.P.~~

*[Company Name]*

**And When Recorded Mail To:**

BSM FINANCIAL, L.P.

*[Company Name]*

*[Name of Natural Person]*
16479 DALLAS PARKWAY, SUITE 100

*[Street Address]*

ADDISON, TX 75001

*[City, State Zip Code]*



DOC # 2004-0946020
11/30/2004 08:00A Fee:57.00
Page 1 of 17
Recorded in Official Records
County of Riverside
Gary L. Orso
Assessor, County Clerk & Recorder

| M | S | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC. |
|---|---|---|------|------|----|----|-------|-----|-------|
|   |   |   |      |      |    |      |       |     |       |
| A | R | L |      |      |    | COPY | LONG | REFUND | NCHG | EXAM |

*[Space Above This Line For Recording Data]*

# DEED OF TRUST

MIN: 100098900041021355

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** **"Security Instrument"** means this document, which is dated November 23, 2004 , together with all Riders to this document.

**(B)** **"Borrower"** is MELODIE D. CORBIN AND DARRELL W. CORBIN, WIFE AND HUSBAND AS JOINT TENANTS

. Borrower is the trustor under this Security Instrument.

**(C)** **"Lender"** is BSM FINANCIAL, L.P. DBA BROKERSOURCE

Lender is a limited partnership organized and existing under the laws of Texas . Lender's address is 16479 DALLAS PARKWAY, SUITE 100, ADDISON, TX 75001

**(D)** **"Trustee"** is FIRST AMERICAN TITLE

**(E)** **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

Loan No: 4102135

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                                   Page 1 of 13                                    14301CA 08/00
www.compliancesource.com                                                                              © 2000, The Compliance Source, Inc.



**(F)** "**Note**" means the promissory note signed by Borrower and dated November 23, 2004 . The Note states that Borrower owes Lender three hundred thirty three thousand seven hundred and NO/100ths Dollars (U.S. $ 333,700.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than December 1, 2034 .

**(G)** "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

**(H)** "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I)** "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ Second Home Rider
☐ Balloon Rider ☒ Planned Unit Development Rider ☐ Biweekly Payment Rider
☐ 1-4 Family Rider ☐ Revocable Trust Rider
☐ Other(s) [specify]

**(J)** "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K)** "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L)** "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M)** "**Escrow Items**" means those items that are described in Section 3.

**(N)** "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O)** "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P)** "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q)** "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R)** "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

Loan No: 4102135



**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the       County          of       RIVERSIDE        :

                                                *[Type of Recording Jurisdiction]*          *[Name of Recording Jurisdiction]*

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.

Assessor's Identification Number:       953-130-016-2

which currently has the address of                          41308 YUBA CIRCLE
                                                    *[Street]*
        TEMECULA          , California     92591-1546              ("Property Address"):
        *[City]*                                    *[Zip Code]*

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    **1.    Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any
Loan No: 4102135

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                              Page 3 of 13                                    14301CA 08/00
www.compliancesource.com                                                                      © 2000, The Compliance Source, Inc.



payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

    **2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

    If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

    Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

    **3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

    Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

    The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

    Loan No: 4102135



If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds,

Loan No: 4102135

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—    Page 5 of 13    1430ICA 08/00
www.compliancesource.com    © 2000, The Compliance Source, Inc.



whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or

Loan No: 4102135

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com

Page 6 of 13

MERS Modified Form 3005 01/01

14301CA 00800
© 2000, The Compliance Source, Inc.



obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a)** Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

**(b)** Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such

Loan No: 4102135

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—                                    Page 7 of 13
www.compliancesource.com

MERS Modified Form 3005 01/01
14301CA 08/00
© 2000, The Compliance Source, Inc.



Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.



**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this

Loan No: 4102135

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                          Page 9 of 13                                              1430ICA 008/00
        www.compliancesource.com                                                                        © 2000, The Compliance Source, Inc.



Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period, which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

Loan No: 4102135

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                    Page 10 of 13                    14301CA 08/00
www.compliancesource.com                                              © 2000, The Compliance Source, Inc.



**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____ (Seal)
MELODIE D. CORBIN                              -Borrower
                                              *[Printed Name]*

_____ (Seal)
DARRELL W. CORBIN                              -Borrower
                                              *[Printed Name]*

_____ (Seal)
                                              -Borrower
                                              *[Printed Name]*

_____ (Seal)
                                              -Borrower
                                              *[Printed Name]*

_____ *[Acknowledgment on Following Page]* _____

Loan No: 4102135
California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                        Page 12 of 13                        14301CA 008/00
www.compliancesource.com                                                © 2000, The Compliance Source, Inc.

State of _California_     §
                              §
County of _Riverside_     §

On _11-23-04_, before me, _Kathleen Nicolas_          *[name and title of officer]*
personally appeared     MELODIE D. CORBIN and DARRELL W. CORBIN

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument in person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Signature _Kathleen Nicolas_     (Seal)

> KATHLEEN NICOLAS
> Comm. # 1314121
> NOTARY PUBLIC - CALIFORNIA
> Riverside County
> My Comm. Expires July 20, 2005

## REQUEST FOR FULL RECONVEYANCE

TO TRUSTEE:

     The undersigned is the holder of the note or notes secured by this Deed of Trust, which was recorded in the office of the Recorder of _____ County, State of California, in book _____, page _____ of official records. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

Date:_____

_____
(Trustee)



## EXHIBIT "A"

Lot 36 of Tract 20881, as shown by Map on file in Book 180, Page(s) 42 through 47 of Maps, records of Riverside County, California

# PLANNED UNIT DEVELOPMENT RIDER

MIN: 100098900041021355

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 23rd day of November , 2004 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to BSM FINANCIAL, L.P. DBA BROKERSOURCE

(the "Lender")

of the same date and covering the Property described in the Security Instrument and located at:

41308 YUBA CIRCLE, TEMECULA, CA 92591-1546
*[Property Address]*

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in Declaration of Covenants,Conditions, and Restrictions of Record (the "Declaration"). The Property is a part of a planned unit development known as

RIDGEVIEW

*[Name of Planned Unit Development]*

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire,

Loan No: 4102135

Initials:

Multistate PUD Rider — Single Family — Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—    Page 1 of 3
www.compliancesource.com

Form 3150 01/01
14501MU 08/00
©2000, The Compliance Source, Inc.

hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then:

(i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C.    Public Liability Insurance.**  Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D.    Condemnation.**  The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E.    Lender's Prior Consent.**  Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:

(i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii)  any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii)  termination of professional management and assumption of self-management of the Owners Association; or (iv)  any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F.    Remedies.**  If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Initials: _____

Loan No:  4102135

Multistate PUD Rider — Single Family — Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                    Form 3150 01/01
—THE COMPLIANCE SOURCE, INC.—                                    Page 2 of 3                                    14501MU 08/00
www.compliancesource.com                                    ©2000, The Compliance Source, Inc.

        BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this
PUD Rider.


_____ (Seal)          _____ (Seal)
MELODIE D. CORBIN          -Borrower          DARRELL W. CORBIN          -Borrower


_____ (Seal)          _____ (Seal)
                          -Borrower                                    -Borrower


Loan No: 4102135
Multistate PUD Rider — Single Family — Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3150 01/01
—THE COMPLIANCE SOURCE, INC.—          Page 3 of 3          14501MU 08/00
        www.compliancesource.com                          ©2000, The Compliance Source, Inc.

# Exhibit "3"  - 2nd Mortgage Statement

## ACCOUNTS IN DESCENDING BALANCE ORDER

**WITH A BALANCE: 12  TOTAL $450,315**                                                                  **WITHOUT A BALANCE: 30**

| Creditor Name<br>Account Number<br>Loan Terms - Status | Date Opened<br>Date Last<br>Reported | High Credit<br>Balance<br>Owing | Payment Terms<br>Account Type<br>Past Due Amount<br>Last Activity Date | Account Type<br>Reported By | Creditor Contact<br>Information |
|---|---|---|---|---|---|
| KOHLS/CHASE<br>054528754252<br>MIN-120 SLOW | 08/09<br>03/11 | $1,276<br>**$1,276** | $71<br>REVOLVING<br>$216<br>12/10 | INDIVIDUAL<br>XPN-2 EFX-2<br>TU-2 | KOHLS/CHASE<br>N56 W 17000 RIDGEWOOD DR<br>MENOMONEE FALLS, WI 53051<br>(414) 783-1635 |
| ADDITIONAL INFORMATION: | 120 SLOW-02/2011  90 SLOW-01/2011  60 SLOW-12/2010  30 SLOW-11/2010  30 SLOW-08/2010<br>ACCOUNT DELINQUENT 120 DAYS PAST DUE DATE , CLOSED ACCOUNT , ACCOUNT CLOSED AT CREDIT GRANTOR'S REQUEST , REVOLVING CHARGE ACCOUNT | | | | |
| GEMB/SAMS CLUB<br>771410041372****<br>MIN-120 SLOW | 01/08<br>03/11 | $1,769<br>**$781** | $31<br>REVOLVING<br>$131<br>11/10 | INDIVIDUAL<br>XPN-1 EFX-1<br>TU-1 | GEMB/SAMS CLUB<br>PO BOX 981400<br>EL PASO, TX 79998<br>(800) 964-1917 |
| ADDITIONAL INFORMATION: | 90 SLOW-02/2011  60 SLOW-01/2011  30 SLOW-12/2010<br>ACCOUNT DELINQUENT 120 DAYS PAST DUE DATE , CLOSED ACCOUNT , ACCOUNT CLOSED AT CREDIT GRANTOR'S REQUEST , REVOLVING CHARGE ACCOUNT | | | | |
| BANK OF AMERICA<br>59201000172443<br>144 MONTHS-CURRENT | 05/03<br>11/08 | $15,208<br>**$0** | $166<br>INSTALLMENT<br>$0<br>11/08 | JOINT<br>XPN-1 XPN-2<br>EFX-1 EFX-2<br>TU-1 TU-2 | BANK OF AMERICA<br>201 N TRYON ST<br>CHARLOTTE, NC 28202 |
| ADDITIONAL INFORMATION: | 30 SLOW-10/2008<br>CLOSED , RECREATIONAL MERCHANDISE | | | | |
| CALIFORNIA COAST CU<br>7804900402<br>66 MONTHS-CURRENT | 07/03<br>03/11 | $13,515<br>**$0** | $246<br>INSTALLMENT<br>$0<br>03/09 | JOINT<br>XPN-1 XPN-2<br>EFX-1 EFX-2<br>TU-1 TU-2 | CALIFORNIA COAST CU<br>PO BOX 502080<br>SAN DIEGO, CA 92150<br>(858) 450-4400 |
| ADDITIONAL INFORMATION: | 30 SLOW-05/2006  30 SLOW-04/2006<br>CLOSED OR PAID ACCOUNT/ZERO BALANCE , AUTO | | | | |
| CAP ONE<br>486236236889****<br>CURRENT | 10/03<br>11/03 | N/A<br>**$0** | N/A<br>REVOLVING<br>$0<br>N/A | INDIVIDUAL<br>XPN-1 EFX-1<br>TU-1 | CAP ONE<br>PO BOX 85520<br>RICHMOND, VA 23285 |
| ADDITIONAL INFORMATION: | ACCOUNT CLOSED BY CONSUMER , CREDIT CARD | | | | |
| CHASE<br>419422472590<br>CHARGE OFF | 11/06<br>04/10 | $108,479<br>**$0** | $613<br>MORTGAGE<br>$0<br>03/10 | JOINT<br>XPN-1 XPN-2<br>EFX-1 EFX-2<br>TU-1 TU-2 | CHASE<br>PO BOX 901039<br>FORT WORTH, TX 76101<br>(800) 800-5626 |
| ADDITIONAL INFORMATION: | CHGOFF-03/2010  120 SLOW-02/2010  90 SLOW-01/2010  60 SLOW-12/2009  30 SLOW-11/2009  30 SLOW-10/2009  30 SLOW-09/2009<br>PROFIT AND LOSS WRITEOFF , HOME EQUITY LOAN , CHARGE OFF AMOUNT IS 108479 , PAID | | | | |
| CHASE<br>447941022500****<br>CURRENT | 03/00<br>03/07 | $5,190<br>**$0** | N/A<br>REVOLVING<br>$0<br>02/07 | INDIVIDUAL<br>XPN-2 EFX-1<br>EFX-2 TU-1<br>TU-2 | CHASE<br>PO BOX 15298<br>WILMINGTON, DE 19850<br>(800) 955-9900 |
| ADDITIONAL INFORMATION: | 30 SLOW-09/2006<br>ACCOUNT CLOSED BY CONSUMER , CREDIT CARD | | | | |

DOC # 2007-0133043
02/27/2007 08:00A Fee:34.00
Page 1 of 10
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|------|------|-----|------|------|-----|------|
| I | | | 10 | | | | 2 | | |
| M | A | L | 465 | 426 | PCOR | NCOR | SMF | NCHG | EXAM |
| | | | | | | | | | 006 |

36

M
006

 **Washington Mutual**

## MODIFICATION AGREEMENT

Grantor/Mortgagor:

**MELODIE D. CORBIN AND DARRELL W. CORBIN**

Loan Number:  0734472590

Borrower(s):

**MELODIE D CORBIN**                    **DARRELL W CORBIN**

This Modification of the ___WaMu Equity Plus(TM)___ Agreement and Security Instrument ("Modification") is made and entered into on ___February 5, 2007___ by and between ___WASHINGTON MUTUAL BANK___ ("we," "us," "our," or "Bank") and the other person(s) signing below ("Borrower" or "Grantor/Mortgagor," as applicable).

Borrower and Bank are parties to a ___WaMu Equity Plus___ Agreement including any riders or previous amendments (the "Agreement") that establishes an account with a loan number identified above (the "Account") from which Borrower may obtain credit advances on a revolving basis from Bank. The Agreement is secured by a deed of trust ("Security Instrument") executed by Grantor/Mortgagor and recorded on ___11/14/2006___ as Instrument No. ___2006-0840188___, in Book or Liber _____, Page(s) _____, in the Official Records of ___RIVERSIDE___ County, California. The Security Instrument secures performance of Borrower's obligations under the Agreement and encumbers the property described in the Security Instrument and located at the address below (the "Property"), more particularly described in Exhibit "A" attached to and incorporated herein as part of this Modification.

Borrower, Grantor/Mortgagor, and Bank agree as follows:

1.   **Effect of this Modification.**  This Modification modifies, amends and supplements the Agreement and Security Instrument. To the extent of any inconsistency between the provisions of this Modification and the provisions of the Agreement or Security Instrument, the provisions of this Modification shall prevail over and supersede the inconsistent provisions of the Agreement or Security Instrument. Except as modified, amended or supplemented by this Modification, the Agreement and Security Instrument shall remain in full force and effect. This Modification will be

0734472590

legally binding and effective upon the parties only when it is signed by each Borrower, Grantor/Mortgagor, and the Bank.

2. **Modified Terms and Conditions.** The terms and conditions of the Agreement and Security Instrument that are modified, amended, and supplemented by this Modification are set forth on the attached Exhibit "B" attached to and incorporated herein as a part of this Modification. The terms used in Exhibit "B" shall have the same meanings as the same or substantially equivalent terms used in the Agreement and the Security Instrument, whether or not the terms used in Exhibit "B," or the Agreement or Security Instrument, are capitalized.

Borrower requests that a copy of any Notice of Default and of any Notice of Sale under the Security Instrument be mailed to the first Borrower named below at the Property address below.

Property Address:

41308 YUBA CIR  TEMECULA, CA 92591-1546

WASHINGTON MUTUAL BANK

By: _____
(Bank Officer Signature)

_____
(Printed Bank Officer Name)

Its: _____
(Bank Officer Title)

---

STATE OF CALIFORNIA

COUNTY OF _Riverside_

On _8th, 2007_ before me, _Rachelle D Torres_, Notary Public,
(insert name here)
personally appeared _Debbie Baxley_, (personally known to me) (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature: _____

My Commission expires: _February 24, 2008_
My Commission number: _1472000_

(Seal or Stamp)

RACHELLE D. TORRES
Commission # 1472000
Notary Public - California
Riverside County
My Comm. Expires Feb 24, 2008

32447 (03/31/06) w7.4                    BANK                    Page 2 of 5

0734472590

By signing below, each Grantor/Mortgagor accepts and agrees to the terms of the Security Instrument as amended and supplemented by this Modification.

GRANTOR/MORTGAGOR:

_____
MELODIE D CORBIN

_____
DARRELL W CORBIN

0734472590

By signing below, each Borrower accepts and agrees to the terms of this Modification.

BORROWER(S):

_____
MELODIE D CORBIN

_____
DARRELL W CORBIN

0734472590

STATE OF CALIFORNIA

COUNTY OF Riverside

On 2/5/07 before me, Beth Polson notary Public , Notary Public,
(here insert name)

personally appeared
MELODIE D CORBIN
DARRELL W CORBIN

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.                     (Seal or Stamp)

Signature: Beth Pol

My Commission expires: August 12, 2009

My Commission number: 1600604

BETH POLSON
COMM. # 1600684
NOTARY PUBLIC · CALIFORNIA
RIVERSIDE COUNTY
MY COMM. EXP. AUG. 12, 2009

0734472590

# EXHIBIT "A"
## ATTACHMENT TO MODIFICATION AGREEMENT

LYING AND BEING LOCATED IN THE CITY OF TEMECULA, COUNTY OF
RIVERSIDE, STATE OF CALIFORNIA; ALL THAT CERTAIN PARCEL OR TRACT
OF LAND KNOWN AS:

LOT 36 OF TRACT 20881, AS SHOWN BY MAP ON FILE IN BOOK 180,
PAGES 42 THROUGH 47 OF MAPS, RECORDS OF RIVERSIDE COUNTY,
CALIFORNIA.

0734472590

# EXHIBIT "B"
# ATTACHMENT TO MODIFICATION AGREEMENT

**Annual Fee:** There is no annual fee on your Account.

**Credit Limit:** The credit limit stated in the Agreement and the principal amount secured by the Security Instrument is hereby increased by $50,000.00, from the current amount of $100,000.00 to the increased amount of $150,000.00. All other terms and conditions relating to the credit limit including, without limitation, our ability to reduce the credit limit during any period when certain events have occurred on your obligation not to attempt, request or obtain a credit advance that will cause your Account balance to exceed your credit limit, remain in full force and effect.

**Daily Periodic Rate and ANNUAL PERCENTAGE RATE Change Dates:** The daily periodic rate and ANNUAL PERCENTAGE RATE for variable rate advances under the Agreement will change on each day that the index changes, and the index will be determined daily. Any provisions of the Agreement indicating that the daily periodic rate and ANNUAL PERCENTAGE RATE for variable rate advances under the Agreement may only change monthly, or indicating that the index is determined only as of a specified date of the calendar month, are hereby deleted.

**Margin:** The margin used in the calculation of the ANNUAL PERCENTAGE RATE for variable rate advances under the Agreement is 0.350%.

**Auto Pay Service for Variable Rate Advances:** The amount of the Margin for your Variable Rate Advances will be affected by how you decide to make payments on the Variable Rate Advances. You may decide whether to make payments on your Variable Rate Advances by making direct payments to us or by authorizing automatic loan payments from an account that you designate (which is our "Auto Pay" service). Your decision whether or not to authorize our Auto Pay service will not affect the availability of the Variable Rate Advances. If you authorize our Auto Pay service for the Variable Rate Advances, the Margin will be discounted (that is, it will be reduced) by either 0.250%, if the account you designate to make the Auto Pay payments is maintained with Washington Mutual Bank, or 0.000%, if that account is maintained with an institution other than Washington Mutual Bank. If you authorize our Auto Pay service, the discount will be put into effect as of a date that we select.

If you have authorized our Auto Pay service for the Variable Rate Advances and thereafter the Auto Pay service for the Variable Rate Advances is terminated by you or us for any reason, the discount that you have received on the Margin for the Variable Rate Advances will be eliminated. Specifically, the Margin will increase on the day that the Auto Pay service is terminated by 0.250%, if the account designated to make the

32658 (09/28/05) W6.4                    **BANK**                    Page: 1

0734472590

**EXHIBIT "B" CONTINUED**
**ATTACHMENT TO MODIFICATION AGREEMENT**

Auto Pay payments is maintained with Washington Mutual Bank, or 0.000%, if
that account is maintained with any other institution.  If the account
designated to make Auto Pay payments is changed from an account maintained
at Washington Mutual Bank to an account maintained at any other
institution, the discount that you have received on the Margin for the
Variable Rate Advances will be reduced.  Specifically, the Margin will
increase by 0.250% on the day the account designated to make Auto Pay
payments is changed to an account maintained at another institution.  In
any such event, the increase in the Margin will result in a simultaneous
increase in the ANNUAL PERCENTAGE RATE (subject to any further increases
or decreases that result from a change in the Index) for the Variable Rate
Advances by the same amount (i.e., by 0.250% or 0.000%, as applicable),
and the Daily Periodic Rate for the Variable Rate Advances will also be
simultaneously changed to an amount that is equal to the new ANNUAL
PERCENTAGE RATE divided by 365 (366 in a leap year).  Following any
termination of our Auto Pay service, the increased Daily Periodic Rate and
ANNUAL PERCENTAGE RATE will not be greater than the maximum Daily Periodic
Rate and ANNUAL PERCENTAGE RATE.  Increases in the Daily Periodic Rate and
ANNUAL PERCENTAGE RATE will increase your Minimum Payment and periodic
FINANCE CHARGES and, if these rates are increased in the last billing
period prior to the Maturity Date, then your Balloon Payment due on the
Maturity Date will also increase.

If the Index, or any substitute Index, is no longer available, we will
choose a new Index.  The new Index will have a historical movement
substantially similar to that of the prior Index, and the Margin will be
changed so that the new Index plus the Margin will result in an ANNUAL
PERCENTAGE RATE that is substantially similar to the ANNUAL PERCENTAGE
RATE in effect at the time the prior Index becomes unavailable (plus any
increase in the Margin that results from any termination of the Auto Pay
service or any change in the account designated to make Auto Pay payments,
as described above).

Borrower Initials: _MDC_    Date: _2/5/07_

Borrower Initials: _DWC_    Date: _2/5/07_

32658 (09/28/05) W6.4                          **BANK**                          Page: 2

## GOVERNMENT CODE 27361.7

*I CERTIFY UNDER PENALTY OF PERJURY THAT THE NOTARY SEAL ON THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READ AS FOLLOWS:*

**NAME OF NOTARY:** Rachelle D. Torres

**DATE COMMISSION EXPIRES:** Feb. 24, 2008

**COMMISSION NUMBER:** 1472000

**PLACE OF EXECUTION:** Riverside, CA

**EXECUTION DATE:** 02/08/07

**SIGNATURE:**

**FIRM NAME (IF APPLICABLE):**

RECORD & RETURN TO:
GROUP9, INC.
2150 CABOT BLVD. WEST
LANGHORNE, PA 19047

## GOVERNMENT CODE 27361.7

*I CERTIFY UNDER PENALTY OF PERJURY THAT THE
NOTARY SEAL ON THE DOCUMENT TO WHICH THIS
STATEMENT IS ATTACHED READ AS FOLLOWS:*

**NAME OF NOTARY:** Beth Polson

**DATE COMMISSION EXPIRES:** Aug. 12, 2009

**COMMISSION NUMBER:** 1600664

**PLACE OF EXECUTION:** Riverside, CA

**EXECUTION DATE:** 8/5/07

**SIGNATURE:** _____

**FIRM NAME (IF APPLICABLE):**

RECORD & RETURN TO:
GROUP9, INC.
2150 CABOT BLVD. WEST
LANGHORNE, PA 19047

# Exhibit "4"  - Schedule D

B6D (Official Form 6D) (12/07)

In re    **Darrell Wayne Corbin,**                                                    Case No. _____
         **Melodie Diane Corbin**
_____,
                                              Debtors

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. xxxx2168 | | | Opened 11/23/04  Last Active  1/21/11 | | | | | |
| Creditor #: 1 **BAC Home Loans Servicing** **Customer Services** **PO Box 5170** **Simi Valley, CA 93062** | | C | Deed of Trust  Primary residence single family home located at: 41308 Yuba Circle, Temecula, CA 92591 | | | | | |
| | | | Value $                     289,000.00 | | | | 324,320.31 | Unknown |
| Account No. | | | | | | | | |
| **Quality Loan Service  Corp** **2141 5th Avenue** **San Diego, CA 92101** | | | Additional Notify: BAC Home Loans Servicing | | | | Notice Only | |
| | | | Value $ | | | | | |
| Account No. xxxxxxxx2590 | | | Opened 11/10/06  Last Active  3/29/10 | | | | | |
| Creditor #: 2 **Chase Home Finance, LLC** **2901 Kinwest Parkway** **Irving, TX 75063-3134** | | C | Second Deed of Trust  Primary residence single family home located at: 41308 Yuba Circle, Temecula, CA 92591 | | | | | |
| | | | Value $                     289,000.00 | | | | 108,479.00 | 108,479.00 |
| Account No. | | | | | | | | |
| **JPMorgan Chase Bank, N.A.** **Attn: Officer of the Bank** **1111 Polaris Parkway** **Columbus, OH 43240** | | | Additional Notify: Chase Home Finance, LLC | | | | Notice Only | |
| | | | Value $ | | | | | |

**1**   continuation sheets attached

Subtotal
(Total of this page)

432,799.31       108,479.00

B6D (Official Form 6D) (12/07) - Cont.

In re    **Darrell Wayne Corbin,**    Case No. _____
         **Melodie Diane Corbin**

_____,
                              Debtors

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | Husband, Wife, Joint, or Community | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| | | H W J C | | | | | | |
| Account No. xxxxx-x-036-2 | | | Monthly | | | | | |
| Creditor #: 3<br>Ridgeview Rancho California HOA<br>c/o Elite Community Management<br>PO Box 80091<br>City of Industry, CA 91716-8091 | C | | Homeowner's Association Dues<br><br>Primary residence single family home located at:<br>41308 Yuba Circle, Temecula, CA 92591 | | | | | |
| | | | Value $          289,000.00 | | | | 0.00 | 0.00 |
| Account No. xxxxxxxxxxxxx1000 | | | Opened 12/15/07  Last Active  2/01/11 | | | | | |
| Creditor #: 4<br>Santander Consumer USA<br>PO Box 660633<br>Dallas, TX 75266-0633 | C | | Security Agreement<br>2005 Chevrolet Tahoe<br>Excellent Condition<br>35,000 miles<br>The Debtors intend to surrender this vehicle. | | | | | |
| | | | Value $           21,135.00 | | | | 20,363.00 | 0.00 |
| Account No. xxxxxx9864 | | | Opened  5/18/09  Last Active  2/01/11 | | | | | |
| Creditor #: 5<br>Wells Fargo Dealer Services/WDS<br>PO Box 25341<br>Santa Ana, CA 92799-5341 | C | | Security Agreement<br>2006 Chevrolet Silverado<br>Excellent Condition<br>55,000 miles<br>This is the Debtor's personal vehicle it is paid for through the business account. | | | | | |
| | | | Value $           30,170.00 | | | | 23,798.00 | 0.00 |
| Account No. xxxxxx6499 | | | Opened  3/04/07  Last Active  2/01/11 | | | | | |
| Creditor #: 6<br>Wells Fargo Dealer Services/WDS<br>PO Box 25341<br>Santa Ana, CA 92799-5341 | C | | Security Agreement<br>2003 Chevrolet Silverado<br>Excellent condition<br>98,000 miles<br>This is the Debtor's DC Pool Services business vehicle. It is in the Debtor's name and is paid for through the | | | | | |
| | | | Value $           10,250.00 | | | | 7,524.00 | 0.00 |
| Account No. | | | | | | | | |
| | | | | | | | | |
| | | | Value $ | | | | | |

Sheet ___1___ of ___1___ continuation sheets attached to
Schedule of Creditors Holding Secured Claims

|  | Subtotal<br>(Total of this page) | 51,685.00 | 0.00 |
|---|---|---|---|
|  | Total<br>(Report on Summary of Schedules) | 484,484.31 | 108,479.00 |